The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nines and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome to the Fourth Circuit this morning. We'll be happy to hear first case, United States v. Linville, No. 214559. Counsel? Good morning, and if it pleases the Court, I'm Kathleen Gleason, and I represent the appellant, Eugene Linville, in this case. Your Honors, the question that Mr. Linville presents is whether his exercise of his right against self-incrimination under the Fifth Amendment is self-executing because the questioning by the probation officer presents his refusal to answer the question by the probation officer presents a substantial penalty. And I want to focus, Your Honors, on a question that I think has come up in some of the cases and the district court raises as well is, is the questioning by the officer coercive? And I think that that turns the standard on its head. I think the question that the court should be looking at is, is the penalty sufficiently coercive so that a person does not feel free to answer? Not whether what the probation officer is doing at that moment, but what is the penalty? Counsel, is that analysis, you know, for right now putting aside the merits of it, is that largely foreclosed by precedent? Your Honor, I do not think that it is. The question that the court in Minnesota v. Murphy asked is whether by implication or expressly the government has presented a penalty that's sufficient. In this case, Your Honor, regarding a probationer, the government is the judicial branch, which includes at the outset in a case like this where his conviction was by plea, includes during the Rule 11 colloquy the district court admonishing and advising a person. And this is, Your Honor, an example of that is at 105 at the Joint Appendix, where he pled to the new case, where the court admonishes the person, you must, well, I can read exactly what the court said in that case. This is a new case? So this is after the events we're talking about? And it's really an example and not necessarily evidence. Do we have record evidence in this case that that was said in the first hearing? Your Honor, we do. I mean, it's hard to consider as evidence something that happened after the fact. Yes, Your Honor, and I do not mean to be presenting new evidence. But it is part of the Rule 11 colloquy. It's one of the requirements is that the person be advised of all of the penalties, which includes supervision, and advised that if you violate supervision, you can be returned to prison. So can I ask you, so you mentioned Minnesota v. Murphy, and it said when you're advised expressly or by implication. And one question I have is when do you contend that he was advised that? Because as I understand it, your client did not testify at this hearing, right? That's correct, Your Honor. So there's no evidence in the record about what the probation officer did or did not say to him before he said this? That's correct. And so, for example, let me give you an easy case. Well, maybe an easy case. If there was testimony in the record credited by the district court that the probation officer said, I'm about to ask you a question, keeping in mind that you have an obligation to answer my questions, and if you don't answer my questions, you're going back to jail. That, to me, would be a much easier case than the one we have here. But there's no evidence that that happened because your client didn't testify, so there's no evidence in the record the probation officer said that. So then is the answer, your view, that it's the condition itself? Like when is it communicated to him, in your view, that unless he answers, he's going back to prison? Your Honor, it's communicated in the judgment, which includes the conditions of supervision. And we constructively assume that in that moment your client was aware of what was said in the judgment, that that's the idea? Your Honor, I think that we can't read out the implicit part of what Minnesota v. Murphy raised. It was expressed or implicit, and it is implicit that a person who is on supervision, a person on supervision knows because of the judgment, because of the penalty, that they can be returned to prison for violating a conviction. And that's just the law. Okay, but that may be true. But the problem for me then is if we're dealing with constructive knowledge rather than testimony that the probation officer actually said to him. I don't know what we do with the application note to 5D1.3c4 of the Guidelines that addresses this exact issue and says refusing to answer questions is not a ground for revoking your supervised release. Your Honor, that actually, that section of the Guidelines was an amendment that was put into place in 2015, which was after his 2013 judgment, which is what he's being revoked on. So the Guidelines that applied then, the actual language of the standard condition has changed. Originally, under Mr. Linville's, it was that you should answer all inquiries of the probation officer truthfully. Now the condition since 2015 is that you should answer all answers or that you should answer all questions. And I don't think that that's relevant. But, Your Honor, that change to the Guidelines happened after Mr. Linville's conviction and judgment. But before the violation hearing. But before the violation hearing. But it was not one of the conditions. The condition actually changed. So the condition Mr. Linville was under was to answer all inquiries. And the Guidelines that he was under at that point, which is the conditions he was under, did not include that section. So he did not have any sort of notice that it could not be used against him. Kennedy. But to follow up on Judge Hyten's mention of that application, it looks like whether the cases in our circuit and all over, none of them are just perfect, but they all kind of relate to things. And the situations where it seems like courts have adopted your argument are where the law in question in the Ninth Circuit case, Oregon law, said that if you invoke the Fifth, you are violating your probation. Or in the Eleventh Circuit, McCathin or whatever, I may get that name wrong, where they have the — where the defendant testified very similar to what Judge Hyten described. Absent that, you know, when the law is that, look, you've got a constitutional right to invoke the Fifth Amendment, either under State law in New York or, you know, Federal law in other places. No one seems to kind of be going with that argument. Well, Your Honor, and that's correct. The cases that are out there are much clearer. What I would ask the Court to consider is that in that suggestion that we should actually look at whether the penalty is coercive, not whether the probation officer's questioning was coercive, and ask the Court to look at this situation, the other self-executing outside of the — Is that right? I mean, so you keep saying, like, let's ignore the probation officer. But I took Judge Hyten's question earlier to be — let me just ask this hypothetical maybe instead. Imagine the law expressly — maybe as it does here, but imagine it expressly said that you cannot be in prison for invoking your Fifth Amendment right. But the guy shows up, and the probation officer says, if you invoke your Fifth Amendment right, you're going to go to prison. I'm going to send you to jail. And the guy answers, right? We might say in that scenario, even if the law doesn't impose a penalty, right, that the probation officer's statement might suffice to create such a penalty situation, right? Well, Your Honor — I guess you want to say it's just about the law, but that doesn't seem right. I mean, it seems like to me what we're trying to determine is sort of, you know, whether a reasonable person in the circumstances they've got believed that they were going to go to the pokey if they invoked the Fifth. And I think that's right, Your Honor. And I do want to separate out, because this is such an entangled question. There's nothing that I am raising that says probation officers, you can't ask this question. He can ask the question. Mr. Linville can answer it, and he can get revoked. The question is the new criminal prosecution. And in that case, I think, Your Honor, that the question is the circumstances. Like a custodial — Why is that? Help me understand. Just make — I want to make sure I understand your position on that. Why is it that it can be used to revoke him but not in a new prosecution, if it's a Fifth Amendment violation? Because that's the heart of the Fifth Amendment, Your Honor. The Fifth Amendment says that this cannot be used against you in a criminal proceeding. And this Court in U.S. v. CAW has found in a published opinion that a supervised release violation hearing is a separate animal and is not a criminal proceeding. So under the current circuit precedent, he can be revoked. In fact, he was. Just like civil proceedings or competency hearings or all the other situations where you can't. That's correct. And the Fifth Amendment says criminal proceeding. And that's why I think the Court should look at the other situation where it is self-executing, which is a custodial situation, where we don't say, hey, your Fifth Amendment right is not self-executing unless the officer says, hey, you're not free to leave. We look at what are the circumstances. But I'm not sure that — with all respect, I'm not sure that answer — that situation helps you, because the analogy I'd want to be here is, so we know the officer has asked some questions. But because neither the defendant nor the officer has testified, we don't actually know anything about what they said. We don't know about the setting where it occurred. We don't know how long he was there. All we know is they asked him some questions and he answered. If you brought a Miranda claim in that situation, we'd say there's been a failure to prove you were in custody for Miranda purposes. Yes. I agree with that, Your Honor. But in that case, in a custodial situation, there's no law that says you've got a judgment, this is your sentence, as the Court has found, that the supervision is part of that sentence. And if you violate your supervision, you can go to prison. And there's no greater penalty than sending someone to prison. And I think that that's where the implicit comes. Because, of course, I can't stand here and say that I'm relying on the express. If you had this same — you had a clearer judgment, but the probation officer began by saying, listen, if you answer, you've got to be truthful, but you can invoke the It wouldn't matter what the judgment would say, right? I mean, this is the sort of inverse of the hypothetical I gave before, that the probation officer could go either way. He could say, if you invoke the Fifth, I'm going to send you to jail. But he could also say, if you do invoke the Fifth, I will most certainly not send you to jail. Well, Your Honor, I don't think that the probation officer has that leeway. Because the judgment is a judgment of the district court. The conditions of supervision are the conditions imposed by the court. And the probation officer has an obligation to report — Well, that's fair. I mean, technically, the probation officer can't say, I'm going to send you to jail if you invoke the Fifth. But if he said it, we would take it as relevant to what a reasonable person would believe, right? Absolutely. He might not be able to say, you're not going to go to jail. In fact, I think he could say that, because that happens to be true in the Federal system, that he can't go to jail for invoking the Fifth. And so if he said what the law is, that would obviously inform what a reasonable person would believe, no? Well, Your Honor, he could go to jail for invoking the Fifth, because one of the conditions of his supervision is to answer all inquiries truthfully. How can he do that with the application note? I'm sorry? With the application note. Because he is — his conditions precede the application note, Your Honor. Because inquiry and question are different. And because the application note didn't exist at the time, and that's not — Well, except that the court deciding whether to revoke him is after the note. And I've looked at the language of the note. The note doesn't purport to change what the rule is. The language the note uses is to clarify. I mean, pretty obviously in response to the Ninth Circuit's decision, the note says this is to clarify that if you invoke the Fifth, you cannot be violated purely for that. Is there any indication — I mean, if the shoe were sort of on the other foot, if you were representing a client who was, in fact — you know, you would say that under that note, the district court can't send him back to jail. And regardless of whether it existed at the time of the judgment, you would say that under that note says you can't send him back to jail, right? I would, Your Honor. And I would say that that court — that note is perhaps not binding on the district court, but certainly advisory. I think the question, though, is separate as far as it applies to the probationer or the person under supervision. He is under the supervision that he received in 2013. I think to impute to him the knowledge that the guidelines have changed and that there is this note in the guidelines is simply a step too far to remove the implicit penalty. This just returns me — but the whole problem is this is all implicit because your client never testified, and we're all constructing the hypothetical knowledge of a hypothetical individual. And it seems to me that you want us to impute some hypothetical knowledge to him, but not all the hypothetical knowledge to him. And I don't really see how we can do that. Well, Your Honor, I would argue that the knowledge isn't hypothetical, that the judgment is the judgment. He is under supervision. He understands that. Well, Your Honor, I shouldn't say understands because we don't know what he understands. We don't know. Can I ask you — you're running out of time. Can I ask you about the inevitable discovery? So first question, I will say I'm genuinely not sure if I think the district court actually made a holding about inevitable discovery, but do you agree that if the district court made a holding on inevitable discovery, you have forfeited any challenge to that by not briefing it on appeal? Your Honor, I did not brief it because the court did not reach that, and I don't think it's properly before this court. The district court quite explicitly did not reach that in its holding, and I don't raise it, and I don't think that it's — Okay. I just wanted to clarify. So your only argument is the district court did not reach it, not the — That's exactly right, Your Honor. And if this court should find for my client, then certainly it would be returned to the district court to consider inevitable discovery, among other things. If the court has no other questions, I yield. Thank you. Counsel, we're happy to hear from you. Good morning. May it please the Court. I'm Julie Niemeyer for the government. The question we're presented with here is essentially whether any routine interview between a probation officer and a defendant on supervised release is inherently coercive. That's not what Minnesota v. Murphy tells us. The district court properly recognized that in denying the motion to suppress. The evidence here shows that Mr. Linville's statements to his probation officer were voluntary. They were not compelled. The requirement to appear and answer questions of the probation officer is — Judge Hyten's point — I mean, you say the evidence shows they were voluntary. I take Judge Hyten's point to disagree with you, to say there's just not evidence of whether they were voluntary. And that means you win, right? But there's a little bit of a difference there. Does that matter to you, right? I mean, because we don't know what the probation officer said. The probation officer could have said, you know, I've got this taser. If you don't answer my question, I'm going to tase you and send you to — I mean, you know, we don't really think that's what happened, but we don't actually know. Does that matter? Well, Your Honor, it does matter, because in this case, we have testimony from the probation officer. We have explicit testimony that he asked the question of Mr. Linville, and he didn't say anything else. He didn't threaten Mr. Linville. He didn't tell him, you have to answer truthfully. He didn't tell him, if you don't answer, you might be subject to revocation. So, yes, it is a negative situation in terms of there is an absence of evidence, but he testified that he didn't say those things. And that's uncontroverted, effectively, because the defendant didn't testify. Correct, Your Honor. And the district court made a finding that the probation officer was credible. He found the probation officer's testimony very credible. So in this case, yes, there is an absence of that evidence. But what we take from that is there is no objective showing of coercion. And in a Fifth Amendment situation, if you don't assert the right, then we are looking at, well, what circumstances may have made the defendant feel coerced. So in the absence of any objective evidence of those circumstances, testimony from the probation officer, the absence of any other evidence from another source, we have to look at whether there was a belief by the defendant and whether that belief was reasonable. And here we see that there simply wouldn't have been a reasonable basis for that belief. You say there has to be both a subjective and an objective. What is the ----  No. Let me clarify, Your Honor. In the absence of objective evidence that coercion was present, then the next step is to see if, even in the absence of such evidence, the defendant may have felt coerced. And there was testimony. There was evidence of that in these other cases where we've seen a finding that there was a Fifth Amendment violation. Hasn't the Supreme Court spent the better part of four decades purging subjective concepts from Fourth and Fifth Amendment analysis? Don't we say ---- haven't they said over and over again what's in someone's heart doesn't control the Fourth or Fifth Amendment? And the reason, because if you did that, you could always allege that someone had something bad in their heart, and then it means you could never resolve any issue without a full-blown ---- right? I mean ---- Absolutely, Your Honor. And this wouldn't be a subjective belief that would create a violation. This would simply be we're examining the record to see if perhaps there were circumstances that would have been reasonable, and in Minnesota v. Murphy does lay out the reasonableness as a standard. That belief must be reasonable. The defendant's purely idiosyncratic belief that he has to answer can't create a Fifth Amendment violation. Correct, Your Honor. Absolutely. Can I take you afield for just a second? And I don't mean to put you in the position of criticizing the Supreme Court, but I am. So tell me why we think of the Fourth and Fifth Amendments differently in this context. We often think in, you know, supervision context that the government can require a defendant to waive his Fourth Amendment rights, at least in some context, or at least to some degrees. Why do we think the Fifth Amendment is different? I mean, Murphy seems to tell us that the Fifth Amendment is different and that the government can't say we'll revoke you if you refuse to answer, but they can say we'll revoke you if you refuse to allow us in your house or whatever it might be. Do you have an insight as to why we think of those two differently? Your Honor, I couldn't pretend to have any insights on that subject. That's fine. I'm not trying to get you to speculate. I just thought you think about these questions a lot, and I just thought I'd get your take on it. Well, I think it's very important in the supervised release context to consider the policy considerations. We have a program of supervised release that has to be administered by the probation office, and part of that program requires answers to questions. The probation officer cannot do his or her job without being able to get answers to his or her questions, to see how the defendant is doing on supervised release. So in that context, it is a sensitive area, and that's why the application note and the other aspects of the guidelines go into great detail about what the probation officer's duties are and what the constitutional parameters are on the exercise of those duties and those responsibilities. So let me preface this by saying that the most mortifying experience I ever had as a lawyer was when I realized that a brief that I filed had failed to cite a highly relevant commentary on one of the federal rules of evidence, which was totally my fault. So I totally understand how this — I was a bit surprised to discover that what strikes me as perhaps one of the most important authorities in this entire case, an application note to the Sentencing Guidelines, I only discovered for the first time when I read a decision that's cited in your brief, but the application note itself is never cited in your brief. Did the government consciously decide not to cite that application note, and is there something I'm missing? Your Honor, that issue wasn't briefed in the response brief. That's correct. But it was brought up in Mr. Linville's reply brief. Sure. But surely the government is not unaware of an application note that's really, really favorable to the government and really, really bad for the defendant. Yes, Your Honor. Was it just — I mean, if the answer is it's just overlooked, that's fine. I'm just — but I guess I want to make sure that it's not that the government doesn't think — as you mentioned, it was brought up in his reply brief. I want to make sure that you're not going to tell me that you actually think it has been misplaced for some reason. Absolutely not, Your Honor. And I think that was simply an oversight in the response brief. The government did discuss the McCaffin case, which, of course, goes into great detail about the application note. And can I ask you a question I asked your colleague on the other side? Do you understand the district court to have reached a holding on inevitable discovery? Candidly, when I read the district court's opinion, I'm really confused about whether it reached a holding on inevitable discovery. And could you try to illuminate that for me? I understand. Yes, Your Honor. If Your Honor would look at JA-71, there are some findings made, which are not an explicit finding that inevitable discovery would apply, but there are factual findings there. If I may just find that page here. What the court does there is make a finding that what Mr. Long testified to, that he found credible. He says the comment of very likely from Mr. Long, he says he had 18 years as a district court, and he said that he had a certain degree of certainty because something might have come up. Yeah, that's where I got confused. The district court seemed to have got wrapped around the axle about the word inevitable, that in order to find inevitable discovery, it would have to be metaphysically certain that it would have happened. Despite the fact that I think the doctrine is it has to be more likely than not, not metaphysically certain that it would have happened. Right, Your Honor. But he does say, I think he's speaking in the probation officer's voice when the court wasn't making that explicit finding because the court didn't need to, because the court found that there was no Fifth Amendment violation. But I think at that point, the court is kind of laying the groundwork for saying these are the facts that I'm finding. I'm finding that this probation officer's testimony was very credible, and I find that he's going to go and get that contraband unless something stopped him. So — But it doesn't seem quite like a whole — because, I mean, if the district court had said, I find there was no Fifth Amendment violation, and I find that even if there was, inevitable discovery applied, then the defendant's failure to brief inevitable discovery might just resolve this whole appeal. But, I mean, I agree with you. I suspect that if we were to agree with the defendant and if we were to send it back, there is a very good chance the district court judge would find that inevitable discovery applies. But I'm not quite sure that he's actually — the court has actually gotten there yet. Is that a fair description of the record? Well, Your Honor, I do think the record has sufficient findings in it for the court to make that determination. So the court — But we would — but your point, I take your agreeing with Judge Heitens in a sense, we would have to basically affirm an alternative ground, a ground that was not definitively decided by the district court. That's correct, Your Honor. That's correct. But you think, in effect, your argument is the factual findings that were made effectively compel the result, even though the result was not reached below. That's correct, Your Honor. I think the Court's colloquy established that the evidence clearly could have been discovered. Mr. Linville was under that condition of a warrantless search upon reasonable suspicion. Even at the point after the polygraph had concluded and before any other questions had been asked of the defendant, at that point, reasonable suspicion existed. The Apparation Officer knew that deception had been shown on the polygraph. He knew that Mr. Linville had answered every other time he'd met with him, no, I don't possess pornography. And so at that point, even at just the point of the polygraph, the Probation Officer knew that there was deception and that the defendant had been dishonest with him in the past. So the reasonable suspicion already existed at that point. And then we just have to go to the question of whether he would have gone and gotten that evidence. And I think the record shows that he would have done so. He testified he had done warrantless searches of child exploitation defendants in the past, that he would have done a thorough search of all the areas of the residence. He would have gone to the basement. He would have seized external storage devices. And all of that would have proceeded from that reasonable suspicion. And again, the district court found his testimony very credible. So I think those findings in their totality regarding whether he could have done that search under the warrantless search provision and whether he actually would have done that, I think those findings are there. So... Unless you have something further? If the... Further questions? No further questions, Your Honor. Great. Thank you, Counsel. Thank you. Happy to hear from you, Counsel. Thank you, Your Honor. And I do want to address one question that Judge Richardson had, and I think it is one of the issues in this case that can be difficult to keep untangled, and that was whether the probation officer can say, if you don't answer, I'm going to revoke your supervision. The officer can say that. The officer can revoke the supervision as far as the question before the court now. The question isn't whether a person can have their supervision revoked even if their rights are violated or whatever the probation officer said to them about their rights. But if a judge did that, if a district judge did that, and it came up on appeal, the defense lawyer would say, see this application note? Right? It's an abuse of discretion to do that. Yes, Your Honor. Right? And so, I mean, the probation officer, in theory, can say lots of things. The question is, can they truthfully say it? And it strikes me as really hard to truthfully say, if you invoke your Fifth Amendment right, you will be put back in prison. Like, that seems to be a false statement. Could a probation officer say it? Sure. I mean, you know, anybody could say it. My point is, is you can't truthfully say it. And the Court is correct. If that were my case, I would certainly raise that issue. I do want to make sure that we're untangling, though, that I'm not raising the  because the probation officer doesn't have that authority. We could ask the Court to revoke his supervision, even if the answer is given in violation of his Fifth Amendment right. But the point is, the probation officer could say, you know, I want to put him in stocks in the town square. Right? But, like, we know a district judge is not going to do that. Right? And we similarly know that if he invokes the Fifth, the district judge is not going to put him in prison. You know, I mean, that we know. Like, that to me is a separate question. I mean, you could have a false but reasonable impression. But there's no real argument here that he could have a truthful belief that he's going to be put in prison for invoking his Fifth Amendment right. That's right. And that's, Your Honor, why I'm asking the Court to consider an objective standard. And I will reference Minnesota v. Murphy where the Court said, we're not making a determination of whether or not this is subjective or objective. They explicitly said that. And that this really should be an objective inquiry. And the objective inquiry is whether someone in Mr. Linville's position, where he's under conditions of supervision, where a violation of those conditions can lead to further imprisonment. Do you have a view on the question I answered, Your Counsel, why from sort of a first principles matter we treat the Fifth Amendment differently than the Fourth Amendment in this context, that we're more protective of the Fifth Amendment here than we are of lots of other rights that we say can be waived? Your Honor, I think that, I mean, it really just sort of goes to the question of the framers at that point. But it seems to me, Your Honor, that— I mean, maybe they're more important than the Third. We can talk about that. But the Fourth and Fifth sort of seem equally sort of important, right? I mean, they're not in order in some sense, right? I think that the sanctity of sort of the person and the threat of imprisonment of the person is so critical versus the sanctity of a person's home. But the sanctity of the home is what really put him back in the prison, right? I mean, it's like the things that were in his home, I mean, that's what really put him back. I mean, do you see what I'm saying? What really put him back was saying, I have my dad's Playboys. I mean, that alone is grounds for revocation, and then saying, and I've got child pornography. It wasn't the going to the home and giving him the contraband. It was the statements that he said that. And I think the idea that the force of the government in whatever law enforcement, whatever guise it is. Is that true? I mean, he couldn't be put – could he be prosecuted based on an uncorroborated confession? He could be – he could have his supervision revoked, certainly. But he couldn't be prosecuted for it, a wholly uncorroborated confession. Whether the prosecution would be successful, I think, is a separate question, if that's the basis of going to the grand jury. Certainly, Your Honor. But that, I think, goes into the question of the inevitable discovery, where if he had not volunteered that he had child pornography, I think it becomes a separate question. And that's where we would be if we're getting to inevitable discovery, is that that statement disappears. And I see that my time is up, Your Honors. And if there are no other questions, I certainly yield. Thank you, Counsel. As you probably know, we would love to follow our longstanding tradition and come down and greet you in person. Unfortunately, we continue to abide by restrictions that prohibit us. But we thank you from here, and we hope we see you back again so we can do it in person.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Toby J. Heytens